J-S04005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARIE ANN RHINEHART, | |
| Appellant | No. 1095 MDA 2014 |

Appeal from the Judgment of Sentence June 16, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000865-2013

BEFORE:  BOWES, ALLEN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                **FILED JANUARY 28, 2015**

Marie Ann Rhinehart appeals from the judgment of sentence of three years probation that was imposed after she was convicted at a nonjury trial of endangering the welfare of a child, possession of drug paraphernalia, and possession of a small amount of marijuana.  We reject Appellant's challenge to the sufficiency of the evidence supporting her conviction of endangering the welfare of a child, and we affirm.

The trial court set forth the evidence that supported its determination that Appellant endangered the welfare of her one-year-old grandson, whom she was babysitting, and we adopt its recitation for purposes of our appeal:

_____

[*]  Retired Senior Judge assigned to the Superior Court.

On April 30, 2013, police were dispatched to 111 Underwood Street in the borough of Jersey Shore. When the police arrived, Tonya Chambers [who is the half sister of Appellant's daughter Dakota Chambers] informed them that Appellant was supposed to be watching [her grandson, who was] Dakota Chambers' one-year old baby, but the baby was crawling around unattended while Appellant and the other occupants of the residence were in Appellant's bedroom smoking bath salts.[1]

The baby and the other occupants stayed downstairs with Officer Brian Fioretti. Officer Fioretti noticed that the baby's diaper was badly soiled with both urine and feces, so he had the other female occupant change the baby's diaper.

Chief Shawn Hummer and Appellant went upstairs. Appellant told Chief Hummer that "Tonya Chambers is bipolar and she doesn't know what she's talking about." Nevertheless, Appellant gave the police permission to search her residence, because "she had nothing to hide."

Five tubes for smoking narcotics were found in the headboard or on the bed in Appellant's bedroom. A wooden box, which contained a blue pipe and a multicolored pipe for smoking narcotics, was hanging on the bedroom wall. Three opened and empty containers of "crystal bubbly" bath salts were found in a garbage can in the bedroom. Two additional tubes for smoking

---

[1]  According to the website of the Drug Enforcement Agency ("DEA"), www.**dea**.gov, the drug with the street name of bath salts is a designer cathinone, *i.e.*, a synthetic stimulant. Mephedrone and methylene-dioxypyrovalerone are two of the designer cathinones most commonly found in bath salts. The stimulant chemicals in question are derivatives of a central nervous system stimulant found naturally in the khat plant. The DEA issued an order controlling the stimulants in bath salts so that the chemicals in question are now designated as Schedule I controlled substances. The effects of ingestion of bath salts are extreme and include paranoia, agitation, irritability, dizziness, depression, violent behavior, confusion, suicidal thoughts, delusions, psychosis, increased heart rate, hypertension, chest pain, heart attacks, seizures, panic attacks, reduced motor control, and impaired mental acuity. ***See also*** http://www.drugfree.org/drug-guide/bath-salts.

narcotics, a straw, a plastic baggie, and three small containers were found in Appellant's pocketbook. Appellant admitted that the items found in the pocketbook were hers, including a small amount of marijuana.

Trial Court Opinion, 8/13/14, at 1-2. Police noticed that Appellant appeared to be under the influence of a controlled substance, and the baby was placed in protective care until his mother returned to the area.

Appellant was charged with endangering the welfare of a child, possession of a small amount of marijuana and possession of drug paraphernalia. She was found guilty of those offenses following a March 7, 2014 bench trial. This appeal followed imposition of the three-year probationary sentence. On appeal, Appellant raises a single contention:

> I. Whether there was sufficient evidence adduced at trial to sustain a conviction for endangering the welfare of a child, as the commonwealth was unable to establish the factual predicate that [Appellant] knowingly violated a duty of care, protection or support, as there was no evidence that the bath salts were utilized by the Appellant.

Appellant's brief at 4.

At the outset, we set forth the applicable standard of review of this claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

- 3 -

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vargas*, 2014 WL 7447678, 7-8 (Pa.Super. 2014) (en banc) (citation omitted).

The offense of endangering the welfare of children is defined, in pertinent part, as follows: "(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(1). In this case, Appellant does not contest that she was supervising the welfare of a child under eighteen years of age nor does she challenge that, if she consumed bath salts, such consumption would violate a duty of care, protection or support that she owed such child. Appellant's sole position is that there was no proof that she ingested bath salts.

The trial court "found beyond a reasonable doubt that [Tonya] Chambers walked into Appellant's bedroom and saw Appellant getting high." Trial Court Opinion, 8/13/14, at 3. *See* N.T. Trial, 3/7/14, at 8. The trial court further observed that Ms. Chamber's testimony was corroborated by

physical evidence contained in the house, including paraphernalia used to consume drugs and three empty containers of bath salts. Additionally, police observed behavior that indicated that Appellant was under the influence of a controlled substance. Thus, while there were no bath salts found in Appellant's residence, the evidence was sufficient to prove that she ingested that substance. As the trial court also noted, the baby was mobile and could have accidentally ingested the dangerous substance in question. Hence, we do not find the evidence so weak and inconclusive that, as a matter of law, there is no probability to be drawn from all the circumstances that Appellant ingested bath salts. There was both an eyewitness and corroborative physical evidence establishing that, beyond a reasonable doubt, Appellant consumed bath salts while her grandson was under her care. Thus, we reject Appellant's challenge to the sufficiency of the evidence and affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/28/2015

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH : No. CR-865-2013
:
vs. : CRIMINAL DIVISION
:
:
MARIE RHINEHART, :
Appellant : 1925(a) Opinion

### OPINION IN SUPPORT OF ORDER IN COMPLIANCE WITH RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

This opinion is written in support of this court's judgment of sentence dated June 16, 2014 and docketed June 23, 2014. The relevant facts follow.

On April 30, 2013, police were dispatched to 111 Underwood Street in the borough of Jersey Shore. When the police arrived, Tonya Chambers informed them that Appellant was supposed to be watching Dakota Chambers' one-year old baby, but the baby was crawling around unattended while Appellant and the other occupants of the residence were in Appellant's bedroom smoking bath salts.[1]

The baby and the other occupants stayed downstairs with Officer Brian Fioretti. Officer Fioretti noticed that the baby's diaper was badly soiled with both urine and feces, so he had the other female occupant change the baby's diaper.

Chief Shawn Hummer and Appellant went upstairs. Appellant told Chief Hummer that "Tonya Chambers is bipolar and she doesn't know what she's talking about."

---

[1] Dakota Chambers is Appellant's daughter and the baby is Appellant's grandson. Tonya Chambers is Dakota Chambers' half-sister; they have the same father.

1



Nevertheless, Appellant gave the police permission to search her residence, because "she had nothing to hide."

Five tubes for smoking narcotics were found in the headboard or on the bed in Appellant's bedroom. A wooden box, which contained a blue pipe and a multicolored pipe for smoking narcotics, was hanging on the bedroom wall. Three opened and empty containers of "crystal bubbly" bath salts were found in a garbage can in the bedroom. Two additional tubes for smoking narcotics, a straw, a plastic baggie, and three small containers were found in Appellant's pocketbook. Appellant admitted that the items found in the pocketbook were hers, including a small amount of marijuana.

Both Chief Hummer and Captain Martin Jeirles noticed that Appellant's speech was slow and her movements were lethargic, which led them to believe that she was under the influence of controlled substances.

Children and Youth Services were called and the baby was removed from the residence. The baby stayed with another relative until his mother returned from Altoona.

Appellant was charged with endangering the welfare of children, possession of a small amount of marijuana, and possession of drug paraphernalia. Appellant waived her right to a jury trial on February 11, 2014, and a bench trial was held on March 7, 2014. At trial, Appellant conceded her guilt with respect to the drug paraphernalia and small amount of marijuana, but she contested the charge of endangering the welfare of children. The court found Appellant guilty of all the charges.

On June 16, 2014, the court sentenced Appellant to three years' probation.

Appellant filed a notice of appeal on July 1, 2014. The sole issue asserted on

2

appeal is that her conviction for endangering the welfare of children was not supported by sufficient evidence, because the Commonwealth did not establish that Appellant knowingly violated a duty of care, protection or support, as there was no evidence presented that the bath salts were snorted or smoked.

When reviewing a challenge to the sufficiency of the evidence, the court must determine whether, viewing the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Nypaver, 69 A.3d 708, 714 (Pa. Super. 2013).

A parent, guardian or other person supervising the welfare of a child less than 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support. 18 Pa.C.S.A. §4304(a)(1).

Appellant readily admitted that she was responsible for caring for the baby while the child's mother, Dakota Chambers, went to Altoona to take care of some legal business. Trial Transcript (T.T.), March 7, 2014, at 37. Appellant contends, however, that the evidence was insufficient to establish that she had snorted or smoked bath salts. The court cannot agree.

The court did not hesitate in concluding that Appellant had smoked bath salts on the date in question. Although the court believed that there was some exaggeration by both Tonya Chambers and Appellant and it did not accept Ms. Chambers' testimony that the child was left alone downstairs, the court found beyond a reasonable doubt that Ms. Chambers walked into Appellant's bedroom and saw Appellant getting high. T.T., at 56. Ms.

3

Chambers credibly testified that she walked into Appellant's bedroom and saw Appellant smoking out of a metal tube. T.T., at 8, 14. Ms. Chambers testimony on this point was corroborated by the tubes and bath salt containers that were found in Appellant's bedroom, as well as the police officers' testimony that Appellant appeared to be under the influence of controlled substances because her speech was slow and her movements were lethargic. Officer Fioretti also testified that the child was able to crawl around and pull himself up to try to get into items around the house. T.T., at 17. From the evidence presented and the reasonable inferences that could be drawn from the evidence, the court reasonably concluded that Appellant violated a duty of care, protection and support when she smoked bath salts around the child, who was mobile and could have had access to the pipes or the bath salts. T.T., at 57. The court can only imagine what would have happened if the child had accidentally ingested some of the bath salts or any residue that could have been left in the bath salt containers in the bedroom garbage can or if he had come in contact with a hot metal tube or pipe.

DATE: _____8-13-2014_____

By The Court,

_____

Marc F. Lovecchio, Judge

cc:    Nicole Ippolito, Esquire (ADA)
       Kirsten Gardner, Esquire (APD)
       Work file
       Gary Weber, Esquire (Lycoming Reporter)
       Superior Court (original & 1)

4